UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| BRANDON DARNELL FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHIEF PETE LAND IN HIS OFFICIAL CAPACITY AND OFFICER R. BALLAS IN HIS INDIVIDUAL CAPACITY, | ) CAUSE NO. 2:16-CV-45-RLM-PRC |
| | ) |
| Defendants. | ) |

OPINION and ORDER

Plaintiff Brandon Darnell Foster sued the police officer who arrested him and the chief of the police department, bringing state law tort claims and claims for constitutional violations under 42 U.S.C. § 1983. This matter is before the court on the defendants' partial motion to dismiss.

I. BACKGROUND

To state a claim within the meaning of Rule 12(b)(6), a complaint "must provide only enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008). A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly,

550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Adams v. City of Indianapolis, 742 F.3d 720, 728 (7th Cir. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Detailed facts and evidence aren't necessary, but "bare legal conclusions" need not be accepted as true and a "formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. at 547.

Mr. Foster, an African American man, was driving his car in Crown Point, Indiana when Officer Ballas of the Crown Point Police Department stopped him. Mr. Foster identified himself and gave Officer Ballas his Illinois driver's license, his birth date, and his Social Security number. Officer Ballas used Mr. Foster's personal information to run a Bureau of Motor Vehicles check, and the check revealed that Mr. Foster's license was valid and there were no outstanding warrants for his arrest.

Officer Ballas then "further searched records,"[1] and discovered another individual with the same first name, last name, and birth date as Mr. Foster. This other Brandon Foster had a different Social Security number and different middle initial than Mr. Foster, and had a suspended Indiana driver's license rather than a valid Illinois one. Officer Ballas incorrectly accused Mr. Foster of

---

[1] Mr. Foster's complaint doesn't specify what further records Officer Ballas searched or how he conducted that search.

being the same person as the other Brandon Foster, assuming that he had used an alias to obtain his valid Illinois license after the suspension of his Indiana license. Officer Ballas placed Mr. Foster under arrest, took him to jail, and towed his car. When Mr. Foster got to the jail, the jail personnel fingerprinted him and entered his fingerprints into the IAFIS national fingerprint database under the name of the *other* Brandon Foster, who Mr. Foster believes is "a hardened criminal." Mr. Foster remained in jail for an unspecified period of time, after which all charges against him were dismissed. Mr. Foster believes he has lost employment opportunities as a result of his fingerprints being associated with the other Brandon Foster's criminal history.

II. DISCUSSION

Mr. Foster sued Officer Ballas in his individual capacity, and sued the chief of the Crown Point Police Department, Pete Land, in his official capacity. The defendants concede that Mr. Foster states a § 1983 claim for false arrest or false imprisonment, and a claim for false imprisonment under Indiana state law. The defendants move to dismiss all the rest of Mr. Foster's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

A. § 1983 Claims as to Chief Land

All of Mr. Foster's federal claims against Chief Land must be dismissed. Mr. Foster doesn't allege that Chief Land was personally involved in any of the

events he complains of; instead, Chief Land is being sued only in his official capacity. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55 (1978). Such a suit is "in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Count I alleges that Officer Ballas violated Mr. Foster's constitutional rights in various ways, and says that the violations were a "direct and proximate result of [Chief Land's] policy and/or custom" of permitting his employees to violate the rights of suspects. Count II makes essentially the same claim by alleging that Chief Land is liable for the constitutional violations in Count I because he had a policy of not adequately instructing, training, or supervising his officers. Section 1983 ordinarily allows a plaintiff only to sue the state actor who personally harmed him rather than that actor's supervisor or employer. An exception exists when the constitutional violation was a proximate result of a high-level policy or custom. *See* Monell v. Department of Social Services of City of New York, 436 U.S. at 694-695 (holding that § 1983 doesn't permit respondeat superior liability, but does allow claims against local governments for official policies or unwritten customs that violate federal rights).

To establish liability under Monell, a plaintiff must demonstrate: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a

custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." Waters v. City of Chicago, 580 F.3d 575, 581 (7th Cir. 2009). Mr. Foster alleges that Chief Land is liable because "pursuant to official policy or custom," he "failed to instruct, supervise, control, and/or discipline on a continuing basis" Officer Ballas. He suggests that Officer Ballas's actions were "not an isolated incident" but rather reflect that the Crown Point Police Department inadequately trains its officers regarding racial profiling and respecting the rights of suspects.

The claims against Chief Land must be dismissed because Mr. Foster's Monell claim is inadequate even under the liberal pleading standards embodied in the Federal Rules. Mr. Foster doesn't allege any facts at all to suggest why he believes Officer Ballas's actions were the result of a policy or practice rather than an individual mistake. He simply says that every allegedly problematic thing Officer Ballas did (or failed to do) must have been the result of an official policy. This isn't enough to survive a motion to dismiss; "[t]o state a Monell claim, a plaintiff is required to plead factual content that allows the court to draw the reasonable inference that the [supervisor or government entity] maintained a policy, custom, or practice" that deprived him of his constitutional rights. McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (internal citations omitted). "To allow otherwise would be tantamount to allowing suit to be filed on a respondeat superior basis. Plaintiffs could file claims whenever a police officer abused them, add Monell boilerplate allegations, and proceed to discovery in the

hope of turning up some evidence to support the 'claims' made." Strauss v. City of Chicago, 760 F.2d 765, 768 (7th Cir. 1985).

That's what Mr. Foster has done. Believing his rights were violated by a particular police officer, Mr. Foster also sues the chief of police by tacking on a boilerplate allegation that the officer's conduct resulted from a policy or practice. "The absence of any facts at all to support plaintiff's claim [of a policy or practice] renders the allegations mere legal conclusions of Section 1983 liability devoid of any well-pleaded facts." Id. at 767. Courts in this circuit routinely dismiss formulaic, bare-bones Monell claims against police departments in situations where a plaintiff offers nothing to suggest that his allegations about a policy or practice are anything more than hopeful speculation. *See, e.g.*, White v. City of Chicago, No. 11 C 7802, 2014 WL 958714, at *3 (N.D. Ill. Mar. 12, 2014); Pam v. City of Michigan City, Indiana, No. 3:12–cv–265, 2012 WL 4060970, *3 (N.D. Ind. Sept. 7, 2012); Nevinger v. Town of Goodland, Indiana, No. 4:11-cv-25, 2011 WL 2694662 (N.D. July 12, 2011); Johnson v. Anderson, No. 1:10–cv–1276, 2011 WL 43220, *2 (S.D. Ind. Jan. 3, 2011); Land. v. Wayne County Sheriff's Department, No. 1:09–cv–365, 2010 WL 2195454, *3 (S.D. Ind. May 29, 2010).

Mr. Foster's complaint doesn't state a federal claim against Chief Land in his official capacity. Count II of the complaint must be dismissed in its entirety, and Count I must be dismissed as to Chief Land.

### B. § 1983 Claims as to Officer Ballas

Count I of Mr. Foster's complaint alleges that Officer Ballas violated his Fourth, Fifth, and Fourteenth Amendment rights by: (1) falsely arresting him; (2) restricting his liberty without due process of law; (3) unreasonably searching and seizing him and his property; (4) falsely imputing to him criminal behavior; and (5) subjecting him to excessive force.

To succeed on his § 1983 claim, Mr. Foster will need to prove the deprivation of a right secured by the Constitution or federal law and that the defendants were acting under color of state law. Armato v. Grounds, 766 F.3d 713, 719–720 (7th Cir. 2014). The defendants concede that the facts alleged in Mr. Foster's complaint state a false arrest claim against Officer Ballas, but argue that Mr. Foster doesn't adequately state a claim for any of the other constitutional violations mentioned in the complaint.

Mr. Foster's Fourteenth Amendment due process claim based on the deprivation of his liberty from the mistaken arrest must be dismissed. A person whose constitutional rights are violated by a state actor can't bring a separate due process claim if the state makes available an adequate remedy for the underlying violation. *See* Guenther v. Holmgreen, 738 F.2d 879, 882 (7th Cir. 1984). The plaintiff in Guenther brought claims very similar to Mr. Foster's, and the court of appeals held that the plaintiff couldn't prevail on his due process claim because "there are Wisconsin tort remedies for matters which form the basis of [the plaintiff's] claim that he was deprived of liberty without due process of law. Specifically, claims for false arrest, false imprisonment, and malicious

prosecution are all actionable in Wisconsin." Id. at 882. Like Wisconsin, Indiana permits a wrongfully arrested person to bring an action against arresting officer for false arrest, false imprisonment, or assault and battery. *See* Drake v. Lawrence, 524 N.E.2d 337 (Ind. App. 1988) (false arrest); Gomez v. Adams, 462 N.E.2d 212 (Ind. App. 1984) (false arrest, false imprisonment, and assault and battery). Because Mr. Foster can seek a remedy for false arrest in state court, he hasn't been deprived due process of law; Indiana provides all the process necessary to challenge the false arrest. *See* Hood v. City of Chicago, 927 F.2d 312, 314 (7th Cir. 1991) ("Guenther appears therefore to foreclose [Plaintiff's] Fourteenth Amendment claim since he alleges that he was deprived of his liberty without due process of law, yet Illinois provides adequate state tort law remedies such as false imprisonment or false arrest").

Mr. Foster's claims for illegal search and seizure in violation of the Fourth Amendment, on the other hand, can go forward. To prevail under § 1983 on this claim, Mr. Foster will have to establish that Officer Ballas's conduct constituted a search or seizure and that the search or seizure was unreasonable under the circumstances. *See* Bielanski v. County of Kane, 550 F.3d 632, 637 (7th Cir. 2008). The defendants argue that Mr. Foster alleged nothing other than an ordinary search incident to arrest, and suggest that this claim is therefore duplicative of his false arrest claim.

The complaint says that Officer Ballas engaged in an unreasonable search and seizure "of Plaintiff's personal property and self," but doesn't elaborate

-8-

further. With regard to the seizure of Mr. Foster's person, the defendants' insistence that the search and seizure claims must be dismissed is puzzling given that the defendants concede Mr. Foster adequately alleged a claim for false arrest. A § 1983 claim for false arrest *is* a claim that a person was seized unreasonably in violation of the Fourth Amendment; the two are simply different terms relating to the same underlying allegation that an officer restrained a person's liberty without probable cause. *See* Devenpeck v. Alford, 543 U.S. 146, 152 (2004) ("[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."); Morfin v. City of East Chicago, 349 F.3d 989, 997 (7th Cir. 2003) (holding that the existence of probable cause is the critical inquiry in a § 1983 suit for false arrest).

Whether Mr. Foster has adequately stated a search-and-seizure claim as to anything other than his person is a closer question, because the complaint doesn't identify the "personal property" Mr. Foster alleges the police searched and seized. Because the complaint's factual summary alleges that Mr. Foster's car was towed to the police station, however, Mr. Foster has done enough to put the defendants on notice that he challenges the constitutionality of the search and seizure of his car.

Mr. Foster also bases his § 1983 claim on the allegation that the defendants violated his constitutional rights by "[f]alsely imputing criminal behavior against Plaintiff via associating Plaintiff's fingerprints with that [sic] of

Brandon J. Foster." Mr. Foster alleges that this conduct violated his constitutional rights, but doesn't clarify how. The court is unaware of any constitutional provision that protects an arrestee's right to be accurately fingerprinted, and Mr. Foster suggests none. To the extent that Mr. Foster alleges the inaccurate fingerprinting as an independent constitutional violation, such a claim must be dismissed. But to the extent Mr. Foster alleges the fingerprinting only as a harmful consequence of the false arrest, he may be able to recover damages based on the fingerprinting if he prevails on his false arrest claim. "[W]hen an illegal arrest sets off a chain of indignities inflicted on the hapless victim... [he] is entitled to obtain damages for these indignities whether or not they are independent violations of the Constitution." Herzog v. Village of Winnetka, Illinois, 309 F.3d 1041, 1044 (7th Cir. 2002).

Finally, Mr. Foster doesn't state a § 1983 claim based on excessive force. The only mention of force anywhere in the complaint is a sentence stating without context or elaboration that Officer Ballas "exerted excessive force on Plaintiff's person." This sort of conclusory legal fluff isn't entitled to a presumption of truth even at the pleading stage. The actual facts alleged in Mr. Foster's complaint don't make out a claim for excessive force; he says that Officer Ballas arrested him and transported him to the police station, but makes no mention of the circumstances of the arrest or the degree of force involved. Mr. Foster's response to the motion to dismiss doesn't address the defendants' attack

on his excessive force claim at all, so he seems to have waived any argument that his complaint adequately alleges excessive force.

Accordingly, the court dismisses the due process portion of Mr. Foster's § 1983 claim with prejudice because an adequate state remedy was available to him. The excessive force portion of his § 1983 claim must be dismissed without prejudice, because Mr. Foster could conceivably amend his complaint to adequately state an excessive force claim. Mr. Foster's allegation that he was inaccurately fingerprinted doesn't state a separate cause of action under § 1983 and so must be dismissed with prejudice, though it might be permissible as an element of damages stemming from false arrest. Mr. Foster's § 1983 claims for false arrest and unreasonable search and seizure can go forward.

### C. Count III - Humiliation

Count III alleges that the actions of Officer Ballas "resulted in humiliation of Plaintiff and injury to Plaintiff's reputation." The defendants point out that "humiliation" is an element of damages rather than a separate cause of action under Indiana law, and Mr. Foster concedes the point in his response brief. Accordingly, Count III is dismissed with prejudice.

### D. Count V – Assault and Battery

The defendants argue that Count V – Mr. Foster's state law assault and battery claim – must be dismissed because he alleges only reasonable use of

force by a police officer discharging his lawful duties. While the defendants frame this as an argument based on the state law privileging law enforcement officers to use reasonable force, Count V is insufficient for a more basic reason: it doesn't state a plausible claim for assault and battery under Rule 8.

As already noted with regard to Mr. Foster's § 1983 excessive force claim, the complaint contains absolutely no factual allegations about what happened during the course of the arrest. In the factual section of the complaint, Mr. Foster alleges that Officer Ballas "arrested Plaintiff for having a suspended license" and "transported Plaintiff to the Lake County Jail." Nowhere does Mr. Foster allege that Officer Ballas actually touched him, tried to touch him, or did anything to cause him to fear being touched – elements that he must plead to state a claim for assault and battery. Mr. Foster makes such allegations in the portion of his complaint explaining Count V, saying without elaboration that the arrest "caused Plaintiff to have a reasonable fear that unlawful and unconsented contact was about to occur" and that Officer Ballas "touched Plaintiff in a rude, insolent, or angry manner." But these allegations are simply boilerplate recitations of the elements of the cause of action, unsupported by any factual basis. The Rule 8 pleading standard is generous to plaintiffs, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Without such elementary information as what the alleged offensive touching was or what Officer Ballas did to put Mr. Foster in fear, the defendants can't defend against Mr. Foster's claim because the

complaint doesn't adequately put them on notice of the basis for the claims against them. Because a later iteration of the complaint could conceivably flesh this claim out enough to meet Mr. Foster's pleading burden, the court dismisses Count V without prejudice.

E. State Claims as to Officer Ballas

The remaining counts IV, VI, VII, and VIII of Mr. Foster's complaint are state law tort claims for negligence, false imprisonment, defamation and intentional infliction of emotional distress. These claims are all brought against both Officer Ballas in his individual capacity and Chief Land in his official capacity.

All the claims must be dismissed as to Officer Ballas, because he is immune from individual liability under the Indiana Tort Claims Act. Whether the Tort Claims Act immunizes a defendant is a question of law properly decided by the court. *See* City of Anderson v. Davis, 743 N.E.2d 359, 362 (Ind. Ct. App. 2001). In Indiana, "[a] lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." Ind. Code § 34-13-3-5(b); *see also* Ball v. City of Indianapolis, 760 F.3d 636, 645 (7th Cir. 2014) ("Under the Indiana Tort Claims Act, there is no remedy against the individual employee so long as he was acting within the scope of his employment."). If an alleged action is within the "general scope" of an employee's authority, "it is 'authorized' within the meaning of the

Tort Claims Act, regardless of whether it was done negligently or with improper motive." Marten v. Swain, 1:12–CV–195, 2013 WL 3155487, at *3 (S.D. Ind. June 20, 2013) (quoting Butt v. McEvoy, 669 N.E. 2d 1015, 1018 (Ind. Ct. App. 1996)).

Mr. Foster insists that he can escape the immunity provision of the Tort Claims Act because he has alleged that Officer Ballas's actions were outside the scope of his employment and were willful, wanton, and malicious. Notwithstanding the broad protection Indiana provides for employees acting within the scope of their duties, immunity doesn't apply where a complaint alleges conduct by the employee that is "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34–13–3–5(c). For each of the state law counts, Mr. Foster's complaint alleges both that Officer Ballas was acting within the scope of his employment (as it must in order to state a claim against Chief Land in his official capacity) and that Officer Ballas's actions were "clearly outside the scope of the employee's employment; and/or malicious; and/or willful and wanton" (as it must in order to state a claim against Officer Ballas individually). Pleading in the alternative is permissible generally, Fed. R. Civ. P. 8(d), but a conclusory statement that a particular act is outside the scope of a police officer's duty or is willful and wanton isn't entitled to a presumption of truth – when ruling on a motion to dismiss, the court ignores such boilerplate and looks to the plaintiff's factual allegations.

The facts alleged in Mr. Foster's complaint establish that Officer Ballas acted within the scope of his employment, and none of Mr. Foster's factual allegations rise to the level of malicious or wanton misconduct. "The actions of pulling someone over, arresting him, etc. are within the general scope of a police officer's authority under the law." Reiner v. Dandurand, 33 F. Supp. 3d 1018, 1032 (N.D. Ind. 2014) (dismissing claims against officer in his individual capacity, where complaint included boilerplate statement that acts were outside the scope of the officer's employment but the only facts alleged related to the officer's arrest of the plaintiff). All the actions attributed to Officer Ballas in the complaint – pulling over a motorist, checking records, making an arrest, and transporting a suspect to jail – are within the general scope of a police officer's duties and are performed in furtherance of the police department's business. The only allegations in the complaint about malicious or wanton conduct are conclusory recitations of those terms. Mr. Foster can't escape the Tort Claims Act simply by tacking such unsupported boilerplate onto each of his claims. His extremely sparse complaint alleges only that Officer Ballas went too far in searching license records after the initial search came up clean, and consequently arrested the wrong man. Those allegations don't rise to the level of willful, wanton, or malicious conduct.

Because the complaint on its face establishes that Officer Ballas was acting within the scope of his employment and doesn't adequately allege criminal, malicious, or willful and wanton conduct, Officer Ballas is immune

from individual liability under the Tort Claim Act. Counts IV through VIII are therefore dismissed with prejudice as to Officer Ballas.

F. State Law Claims as to Chief Land

While Officer Ballas is individually immune from liability for acts taken in furtherance of the police department's business, this immunity doesn't extend to Chief Land in his official capacity. Instead, the defendants rely on a different source of immunity: the Indiana Tort Claims Act's separate law enforcement immunity provision. The defendants argue that this provision makes them immune to all of Mr. Foster's state law claims other than Count VI (false imprisonment).[2]

The Tort Claims Act provides that a government entity "is not liable if a loss results from…enforcement of or failure to adopt or enforce: (A) a law (including rules and regulations)" unless "the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34–13–3–3(8)(A). "[A]dd on" claims "such as negligence and intentional infliction of emotional distress do not survive simply because they are a product of improper conduct," even when they relate to a claim that escapes the immunity provision such as false arrest or false

---

[2] As the defendants admit, a claim for assault and battery based on allegations of excessive force also escapes the law enforcement immunity provision. *See* Wilson v. Isaacs, 929 N.E.2d 200, 203 (Ind. 2010). Because the court dismisses Mr. Foster's state law battery claim for the reasons already discussed, it isn't necessary to decide whether that claim is barred by law enforcement immunity.

imprisonment. Struck v. Town of Fishers, Indiana, No. 1:11-CV-1521, 2013 WL 1149718, at *3 (S.D. Ind. Mar. 19, 2013) (citing Miller v. City of Anderson, 777 N.E. 2d 1100, 1104 (Ind. Ct. App. 2002).

Mr. Foster appears to concede that law enforcement immunity defeats all of his state law claims other than assault and battery and false imprisonment. His response brief doesn't address the defendants' immunity arguments as to any of the other state law claims, and argues only that "the claims of assault, battery, false imprisonment, and excessive force should be allowed to proceed." Accordingly, Mr. Foster has waived the argument that his other state law claims are not barred by the law enforcement immunity provision of the Tort Claims Act. *See* McAllister v. Town of Burns Harbor, 693 F. Supp. 2d 815, 823 (N.D. Ind.), *aff'd sub nom.* McAllister v. Price, 615 F.3d 877 (7th Cir. 2010) (noting that "because the Plaintiff has failed to offer any argument supporting liability" in response to the defendants' immunity arguments, "he has waived the issue."). Counts IV, VII, and VIII of Mr. Foster's complaint are dismissed with prejudice.

G. Leave to Amend

Because Mr. Foster could conceivably file an amended complaint that cures the deficiencies in his § 1983 excessive force claims, his § 1983 Monell policy or practice claims, and his state law assault and battery claims, these portions of Counts I, II, and V are dismissed without prejudice and with leave to amend. Because Mr. Foster's § 1983 due process and false imputations claims

in Count I and his state law claim for "humiliation" in Count III can't be saved by amendment, these claims are dismissed with prejudice. Similarly, all state law claims against Officer Ballas and Counts IV, VII, and VIII against Chief Land fail due to the immunity provisions in the Indiana Tort Claims Act and are therefore dismissed with prejudice.

III. CONCLUSION

For the reasons stated above, the court DISMISSES: (1) Count I in its entirety as to Chief Lands; (2) Count I as to Officer Ballas to the extent that it alleges due process violations, excessive force, and false imputation; (3) Count II; (4) Count III; (5) Count IV; (6) Count V; (7) Count VI as to Officer Ballas; (8) Count VII; and (9) Count VIII.

Mr. Foster's § 1983 claims against Officer Ballas for unlawful search and seizure and false arrest and his state law false imprisonment claim against Chief Lands survive.

SO ORDERED.

ENTERED: <u>July 25, 2016</u>

   /s/ Robert L. Miller, Jr.   
Judge
United States District Court
